Frank A. G-tjlotta, J.
This is an action by a mother against her daughter to impress a trust upon certain real property conveyed by the mother to her daughter in exchange for an agreement by the latter to procure a mortgage on the property and a further promise on the part of the daughter to permit the mother to reside in the house as long as she lived.
When plaintiff’s husband died in September, 1955, plaintiff went to live with defendant for some weeks. At the time plaintiff was the owner of premises known as 166 Fair lawn Avenue, West Hempstead, New York, a two-family house, valued at about $16,500. It was encumbered by a first mortgage of $1,400 and had an income of $80 per month.
Plaintiff asked defendant to take over the premises upon’ the conditions aforesaid. The latter obtained a $5,500 first mortgage and after paying off the existing first mortgage and expenses for the new mortgage, the balance was given to plaintiff. Plaintiff kept her one room in the porch. She suffers from arthritis and this room had been especially laid out for her, while her husband was alive, with a low bed, chairs and a nearby *795 lavatory to minimize the inconvenience caused by her illness. She remained there until August, 1959, when she was removed to a nursing home where the charges are $75 per week. Her money is now exhausted and she seeks to charge defendant with an outstanding bill due the nursing home, plus such sums as may fall due in the future for such services.
Defendant denies any agreement to keep her mother for life, but she says she took her in because she felt a moral obligation, and would still be taking care of her if it were at all possible for her to do so. She says it is impossible to take her back in her present condition because her mother is confined to a wheel chair, needs constant nursing and is unable to care for herself. Defendant says she is physically unable to care for her mother in her own home and she cannot afford to keep her elsewhere, especially without assistance from her two brothers, who at present are contributing nothing.
While the conveyance contains no recital as to the agreement plaintiff claims was reached, the court is of the belief that such an agreement was made and so finds. It does not seem reasonable that a widow 67 years of age would forego, for a net sum of about $3,500, a $16,500 home which was specially constructed to suit her needs as a progressive arthritic patient, and where she had a monthly income of $80, unless she was assured of a home for life. The plaintiff was in no position to make a gift of the only asset she had in the world and it is not reasonable to suppose that she did so and left herself without a sou.
However, as a practical problem, it is impossible for her to return to her room, and thus avail herself of the agreement which was made. Implicit in this agreement is an intention to create a charge on the property for this special use, which could only be performed at the property, although as is naturally to be expected from these two women unlearned and unversed in the intricacies of the law, nothing was said between them about a life estate or trust estate in the property for the benefit of the plaintiff. The court feels that a helpless person situated as this plaintiff is, should not be left without a remedy. However, the agreement made is rendered unenforcible by section 242 of the Beal Property Law, which requires that either of said estates be created by an instrument in writing, excepting however, trust estates created “by act or operation of law”. This is the same exception contained in the original Statute of Frauds enacted by Parliament in 1677 and it has been construed since that time, both by courts in England and in this country, to cover both resultant trusts, where the law implies a trust upon the basis of the actual or presumed intention of the settlor and *796 the so-called “ wrong rectifying ” or constructive trusts, which are frankly created without regard to the intention of the parties and often in direct contravention of the intention of a wrongdoer, in order to prevent an injustice.
However, the situation here fits into no recognizable category of resultant trusts. While the common law countenanced such a trust where a grantor made an otherwise unexplained voluntary conveyance, Bogert points out in his work on Trusts and Trustees (Yol. 2-A, § 453) that modern methods of conveyancing, which uniformly recite payment of consideration and also expressly dispose of the use or equitable interest by the habendum clause, leave no room for an inference of a reserved use and have rendered this type of resultant trust obsolete. Furthermore there was consideration of sorts paid here, albeit, it was raised by a mortgage on the property itself. The most likely category of resultant trust into which this case might fit, is that which declares such a trust where an attempt to create an expressed trust fails. There is a general rule that such a trust arises where a gratuitous transfer is made and the owner manifests an intention that the transferee hold the property in trust (See 2 Restatement, Trusts [2d] § 411) but it is there stated that the rule is not applicable where the trust fails because of failure to comply with the Statute of Frauds (see comment o, pp. 1270-1271) reading in part as follows: “ Thus, where land is transferred inter vivas upon an intended trust for the transferror or for a third person, but the instrument of conveyance is absolute in its terms and the intention to create a trust does not appear therein, the transferee does not hold the "land upon a resulting trust for the transferor, although the intended trust is unenforceable because of the Statute of Frauds. In such a case, the transferee can hold the land for his own benefit, unless the transfer was made under such circumstances that a constructive trust is imposed in favor of the transferor or third party. On the question whether and under what circumstances a constructive trust will be imposed, see §§ 44, 45.” The Restatement (§ 44) suggests a basis for a constructive trust where an attempt to set up an expressed oral trust fails because of the Statute of Frauds, only in special situations, but including that in which “(b) the transferee at the time of the transfer was in a confidential relation to the transferor ” and refuses to perform the trust. This is further elucidated at comment c as follows: “Where the -owner of land transfers it inter vivas to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, the transferee will be compelled to hold the land
*797 upon a constructive trust for the transferor, if the transferee at the time of the transfer was in a confidential relation to the transferor. This is true even though at the time of the transfer the transferee intended to perform the oral trust, and even though he was not guilty of undue influence or other abuse of his confidential relation to the transferor in procuring the transfer. ’ ’
But there is a particular reason why a constructive trust would not be appropriate or proper in this case. The constructive device is used to put title back in the transferor, to prevent an unjust enrichment of the transferee. It is only needed where the agreement made by the transferee cannot be enforced, since it is only then that he is unjustly enriched. Where the contract can be enforced because of part performance, or where alternatively the transferee makes no issue of its enforcibility, there is no need to construct a trust. However, where such remedy is used, it must take the form of returning the parties to their original position. If it were used as a matter of course to enforce the agreement instead of putting the parties in- statu quo, it would be equivalent to nullifying the Statute of Frauds by circumventing it and refusing to abide by it, simply because it was applicable.
Where the gist of the oral agreement which fails because of the Statute of Frauds is to hold title to property for the benefit of the grantor and to reconvey on demand, it makes little difference whether the court constructs a trust, or specifically enforces the agreement on the theory that part performance has taken the case out of the Statute of Frauds. In Natelson v. A. B. L. Holding Co. (260 N. Y. 233) this thought is expressed at page 241 when it is stated, that the statute may be overcome, “ ‘ where a confidential relation would be abused if there were repudiation, without redress ’ (Foreman v. Foreman, 251 N. Y. 237, 240)” [constructive trust], “or, what is perhaps the same thing, where there has been part performance by unequivocal acts clearly referable to the agreement (McKinley v. Hessen, 202 N. Y. 24)” [specific performance].
Here, there is a vital difference in these alternatives, because the defendant’s agreement was not to reconvey, but to give the plaintiff a home, and this she did for four years and stands ready to do in the future if it were physically possible. It is the plaintiff’s physical condition which makes acceptance of the accommodations impossible, except under conditions of great expense for constant and continuous nursing care, which were not part of the original bargain. There has been full performance here by the plaintiff and part performance by the defendant up until the time plaintiff left for the nursing home —■ *798 sufficient performance to take the case out of the Statute of Frauds. The rule is that the performance must be unequivocally referable to an alleged agreement—performance which alone and without the aid of words of promise to explain it, would be unintelligible or at least extraordinary in the existing circumstances. (Burns v. McCormick, 233 N. Y. 230.) The gift of a valuable house by a mother to her daughter is not ‘ ‘ per se ’ ’ unintelligible, but where it leaves the donor penniless, it becomes so unless explained by the agreement claimed by the plaintiff to have been made here. When we add to this the very substantial services rendered by the daughter, it would be highly inequitable to take the property away from the defendant by means of a constructive trust, but neither is it in consonance with fair dealing to let her keep the property without the burden she agreed to assume.
There is of course no basis for charging defendant or the property with the nursing home bills in whatever amount they happen to be. On equitable principles she should pay no more than the cash equivalent of the bargain she made.
The proof before the court is that the value of the room plaintiff was to occupy is about $10 per week, and that the cost of board was minimal, because it cost very little to feed the plaintiff by adding the small amount she ate, to the food which was regularly being prepared for defendant’s family of four. In the absence of anything more specific the court fixes this at $5 per week, making a total weekly charge of $15.
Although the action asks that a trust be impressed, the court does not believe this to be possible. The terms of defendant’s agreement do not fit any pattern of expressed trusts provided for in section 96 of the Real Property Law, and section 91 abolishes all uses and trusts not provided for in the article. In addition section 93 provides that a passive or dry trust vests an immediate legal estate in the beneficiary and the trustee holds nothing. While trusts imposed by law are exempt from these requirements, for reasons heretofore indicated, the instant case is not that kind of trust.
The court, therefore, concludes that the plaintiff is seized of a legal life estate in the portion of the premises involved, but since the proof shows that the defendant has converted plaintiff’s room into an office, removed the lavatory and otherwise eliminated any possibility of further enjoyment of the room by the plaintiff, assuming she ever regains her health enough to use the room, the court decrees that plaintiff be paid the equivalent cash value hereby fixed at $15 per week for the rest of plaintiff’s life, starting September, 1959, when defendant put plain *799 tiff in the nursing home and took possession of plaintiff’s room for her own purposes. This is declared a charge on the real property and in default of payment, the plaintiff may apply to the court for the sale of same to satisfy her lien, the total amount of which may he determined by reference to life expectancy tables. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Settle judgment on notice.